# United States Court of Appeals for the Federal Circuit

_____

**DONGBU STEEL CO., LTD.,**
*Plaintiff,*

**and**

**UNION STEEL MANUFACTURING CO., LTD.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**and**

**ARCELORMITTAL USA, INC.,**
*Defendant,*

**and**

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellee.*

_____

2010-1271

_____

Appeal from the United States Court of International Trade in case no. 07-CV-0125, Judge Delissa A. Ridgway.

_____

Decided: March 31, 2011

————————————

DONALD B. CAMERON, Troutman Sanders LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were JULIE C. MENDOZA, R. WILL PLANERT, BRADY W. MILLS and MARY S. HODGINS.

CLAUDE BURKE, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United Stated Department of Justice, of Washington, DC, argued for defendant-appellee United States. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director. Of counsel on the brief was JONATHAN ZIELINSKI, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

ELLEN J. SCHNEIDER, Skadden, Arps, Slate, Meagher & Flom LLP, of Washington, DC, argued for defendant-appellee United States Steel Corporation. On the brief were ROBERT E. LIGHTHIZER and JEFFREY D. GERRISH. Of counsel was JAMES C. HECHT.

————————————

Before LINN, PLAGER, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

This is a trade case involving the Department of Commerce's ("Commerce's") practice of "zeroing" certain negative values when calculating duties in antidumping investigations and administrative reviews. Specifically, this case concerns Commerce's use of zeroing in administrative reviews. Commerce has previously argued that the relevant statutory provision compels zeroing. This court has opined that the statutory text applicable to both investigations and administrative reviews—namely the

term "exceeds" in 19 U.S.C. § 1677(35)(A)—is sufficiently ambiguous to defer to Commerce's decision of whether or not to use zeroing in both stages of its antidumping procedures. *Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343 (Fed. Cir. 2005) ("*Corus I*"); *Timken Co. v. United States*, 354 F.3d 1334 (Fed. Cir. 2004). We have upheld Commerce's use of zeroing as reasonable no fewer than seven times over the past decade.[1]

Under the facts of this case, we have come full circle as Commerce has now decided to stop using zeroing in investigations to comply with international treaty obligations while continuing to use it in administrative reviews. Surely, under appropriate circumstances, Commerce may change its position as to whether to apply zeroing. *See, e.g.*, *SKF USA Inc. v. United States*, No. 2010-1128, 2011 WL 73179, at *6 (Fed. Cir. Jan. 7, 2011) ("*SKF III*"). Indeed, we have recently affirmed Commerce's change in its zeroing policy affecting investigations. *U.S. Steel Corp. v. United States*, 621 F.3d 1351 (Fed. Cir. 2010). The circumstances here, however, present a unique twist because Commerce's compliance with international treaty obligations has lead it to interpret a single ambiguous statutory term inconsistently during different phases of an antidumping duty assessment, i.e., using zeroing for administrative reviews but no longer using zeroing for investigations. The issue presented in this case is whether Commerce is entitled to deference when it interprets 19 U.S.C. § 1677(35) inconsistently. We conclude

---

[1]    *SKF USA Inc. v. United States*, No. 2010-1128, 2011 WL 73179 (Fed. Cir. Jan. 7, 2011); *Koyo Seiko Co. v. United States*, 551 F.3d 1286 (Fed. Cir. 2008); *SKF USA Inc. v. United States*, 537 F.3d 1373 (Fed. Cir. 2008); *NSK Ltd. v. United States*, 510 F.3d 1375 (Fed. Cir. 2007); *Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007); *Corus I*, 395 F.3d 1343; *Timken*, 354 F.3d 1334.

that Commerce has failed to adequately explain why it has interpreted this statutory provision inconsistently. Accordingly, we vacate the decision of the Court of International Trade and remand for further proceedings.

BACKGROUND

I

Dumping occurs when a foreign producer sells a product in the United States at a price that is below that producer's sales price in the country of origin. If a United States industry believes that it is being injured by unfair competition through dumping, it may request the imposition of antidumping duties. Commerce conducts an investigation to determine whether and to what extent dumping is occurring. If the final determination is affirmative and the U.S. International Trade Commission determines that the domestic industry is being injured, an antidumping order is issued and antidumping duties are assessed. Foreign producers subject to antidumping orders may request a subsequent administrative review to determine (1) whether the extent of dumping has changed since the order went into effect or since the prior review period, and (2) the actual amount of antidumping to be assessed on the imports of subject merchandise from each producer being reviewed.

In antidumping proceedings, Commerce determines antidumping duties for a particular product by comparing the product's "normal value" (the price a producer charges in its home market) with the export price of comparable merchandise. 19 U.S.C. § 1677(35)(A). We have previously recognized that Commerce uses different comparisons at the investigation stage than at the administrative review stage. *Corus I*, 395 F.3d at 1347; *compare* 19

U.S.C. § 1677f-1(d)(1) (investigations), *with* 19 U.S.C. § 1675(a)(2)(A) (administrative reviews). Regardless of the stage, Commerce first calculates a "dumping margin" equal to "the amount by which the normal value exceeds the export price or constructed export price." 19 U.S.C. § 1677(35)(A). Next, Commerce calculates a weighted-average dumping margin "by dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate . . . constructed export prices of such exporter or producer." *Id.* § 1677(35)(B). In this second step, Commerce has historically used a controversial methodology called "zeroing" whereby only positive dumping margins (i.e., margins for sales of merchandise sold at dumped prices) are aggregated and negative margins (i.e., margins for sales of merchandise sold at non-dumped prices) are given a value of zero. Alternatively, Commerce can use "offsetting" methodology whereby the positive and negative dumping margins are all aggregated to reduce the final margin.

This determination of dumping margins as provided in 19 U.S.C. § 1677(35)(A) is at the heart of the zeroing debate. Domestic industries and the government have previously argued that the use of the word "exceeds" in 19 U.S.C. § 1677(35)(A) limits the definition of "dumping margin" to positive numbers. In other words, they read the statute to require zeroing. *Timken*, 354 F.3d at 1340-41. Foreign producers have argued that Commerce's use of zeroing is an unreasonable interpretation of the anti-dumping statute. *Id.* at 1340. This court has repeatedly addressed zeroing as it pertains to both investigations and administrative reviews. We have held that 19 U.S.C. § 1677(35)(A) is ambiguous with respect to zeroing, and we have deferred to Commerce's reasonable interpretation of that statute to allow its use of zeroing in both investigations and administrative reviews.

We first considered Commerce's zeroing policy in the context of administrative reviews in *Timken*. Applying *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), we examined the language of 19 U.S.C. § 1677(35)(A) and held that it "does not directly speak to the issue of negative-value dumping margins." *Timken*, 354 F.3d at 1342. We concluded that "Congress's use of the word 'exceeds' does not unambiguously require that dumping margins be positive numbers." *Id.* Having found the statute ambiguous, we evaluated whether Commerce's use of zeroing in administrative reviews was based on a permissible statutory construction, and concluded that the zeroing policy was based on a reasonable interpretation of 19 U.S.C. § 1677(35)(A).

In *Corus I*, an appeal involving Commerce's use of zeroing in investigations, the question posed by appellants was whether investigations were sufficiently different from administrative reviews to draw a distinction between these proceedings. Corus argued that zeroing is inconsistent with the statutory scheme for investigations and that *Timken* should not apply to investigations. Commerce acknowledged that the proceeding at issue in *Timken* was an administrative review rather than an investigation, but it argued that this distinction is not dispositive because *both* proceedings implicate Commerce's interpretation of 19 U.S.C. § 1677(35)(A). Brief for Defendant-Appellee, Department of Commerce at 18, 23-24, *Corus I*, 395 F.3d 1343 (Fed. Cir. 2005) (No. 04-1107), *available at* 2004 WL 3768287 at *18, 23-24. Commerce argued that "[t]here is no provision in the statute for applying the definitions of 'dumping margin' and 'weighted average dumping margin' differently in an investigation and a review." *Id.* at 18. We agreed with Commerce that the differences between investigations

and administrative reviews are subsumed by 19 U.S.C. § 1677(35), which is applicable to both proceedings. *Corus I*, 395 F.3d at 1347. Accordingly, we concluded that *Timken* governed and that the Court of International Trade was correct to find Commerce's zeroing methodology permissible in investigations. *Id.*

Although Commerce's practice of zeroing was upheld by this court, Commerce's use of zeroing in investigations was challenged by the European Communities before the World Trade Organization's ("WTO's") Dispute Settlement Body. *See U.S. Steel*, 621 F.3d at 1354. Both the Dispute Settlement Body and the WTO Appellate Body concluded that the United States' use of zeroing was inconsistent with Article 9.3 of the Antidumping Agreement and Article VI:2 of the General Agreement on Tariffs and Trade 1994. *See id.* Commerce responded to the adverse WTO ruling according to the two administrative procedures laid out in the Uruguay Round Agreements Act. *See* 19 U.S.C. § 3533 ("Section 123"); 19 U.S.C. § 3538 ("Section 129"). The United States Trade Representative consulted with appropriate congressional committees and private sector committees, and Commerce provided for public comment before determining whether and how to change its practice as required by Section 123. After these consultations, Commerce determined that it would cease its zeroing practice in new and pending investigations. *See Antidumping Proceedings: Calculation of the Weighted Average Dumping Margin During an Antidumping Duty Investigation; Final Modification*, 71 Fed. Reg. 77, 722 (Dec. 27, 2006) ("*Section 123 Determination*"). Commerce decided it would use offsetting methodology in these investigations instead of zeroing. *Id.* It explicitly declined, however, to extend this offsetting policy to other types of antidumping proceedings, including administrative reviews. *Id.*

In *U.S. Steel*, domestic producers challenged this policy change as applied to specific investigations, arguing that the antidumping statute requires Commerce to use zeroing in investigations. 621 F.3d at 1358-59. The government argued that the change in Commerce's interpretation of the statute was reasonable and reflected the political branches' carefully tailored response to an adverse WTO decision. *Id.* at 1360. Applying *Chevron*, we again reviewed the language of the statute. We reiterated that we are bound by our previous decisions in *Timken* and *Corus I*, which both held that § 1677(35)(A) does not unambiguously preclude or require Commerce to use zeroing methodology. *Id.* at 1361. We then concluded that Commerce's use of offsetting methodology reflects a reasonable interpretation of an ambiguous statute. *Id.* at 1360.

At the same time domestic producers were attacking Commerce's new offsetting methodology for investigations in domestic courts, foreign producers were using the WTO dispute process to attack Commerce's continued use of zeroing methodology in administrative reviews. In at least four separate decisions, the WTO Appellate Body has found the United States' use of zeroing in administrative reviews to be inconsistent with Article 9.3 of the Antidumping Agreement and Article VI:2 of the General Agreement on Tariffs and Trade 1994. *See* 75 Fed. Reg. 81534 (discussing WTO dispute findings of non-compliance). Foreign producers have pointed to these WTO decisions in proceedings before this court, arguing that Commerce's use of zeroing in administrative reviews is unreasonable because the practice is inconsistent with the United States' international obligations. *See e.g.*, *SKF III*, 2011 WL 73179 at *8; *Koyo Seiko Co. v. United States*, 551 F.3d 1286, 1290-91 (Fed. Cir. 2008); *NSK Ltd. v. United States*, 510 F.3d 1375, 1379-80 (Fed. Cir. 2007);

*Corus Staal BV v. United States*, 502 F.3d 1370, 1374-75 (Fed. Cir. 2007) ("*Corus II*"). In response to these arguments, we have repeatedly indicated that adverse WTO decisions have no bearing on the reasonableness of Commerce's actions. We have explained that this court "'will not attempt to perform duties that fall within the exclusive province of the political branches,'" thus this court will not "'overturn Commerce's zeroing practice based on any ruling by the WTO or other international body unless and until such ruling has been adopted pursuant to the specified statutory scheme.'" *Corus II*, 502 F.3d 1370 (quoting *Corus I*, 395 F.3d at 1349).[2]

While we have repeatedly addressed whether Commerce's use of zeroing in administrative reviews is unreasonable in light of the adverse WTO decisions, we have not yet considered the issue presented by Plaintiff-Appellant Union Steel Manufacturing Co., Ltd. ("Union") in the present case. Union argues that it is unreasonable under *Chevron* for Commerce to construe the identical statutory provision—19 U.S.C. § 1677(35)—to have opposite meanings in investigations and administrative reviews where (1) nothing in the statutory language indicates that different interpretations were intended and (2) this court has rejected the claim that the meaning of § 1677(35) depends on the stage of the antidumping proceeding.

---

[2] Commerce is in the process of determining whether and how to modify its zeroing practice to address these WTO decisions. *See* 75 Fed. Reg. 81533-36. The government has represented to this court that this potential policy change is not relevant to the present appeal or its disposition.

## II

In 2005, Commerce initiated the twelfth administrative review of certain corrosion-resistant carbon steel flat products from the Republic of Korea. *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 70 Fed. Reg. 56,631 (Sept. 28, 2005). The administrative review covered the period between August 1, 2004 and July 31, 2005. *Id.* In September 2006, Commerce published the preliminary results. *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea*, 71 Fed. Reg. 53,370 (Sept. 11, 2006). On March 20, 2007, Commerce published the final determination. *Notice of Final Results of the Twelfth Administrative Review of the Antidumping Duty Order on Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea*, 72 Fed. Reg. 13,086 (March 20, 2007). In its administrative case briefs, Union did not raise the issue of zeroing, and at the time Commerce issued the preliminary results, Commerce's policy was to use zeroing in both investigations and administrative reviews. After the preliminary results but before issuance of the final results, Commerce changed its zeroing policy with respect to investigations. Union submitted a letter to Commerce on January 11, 2007 challenging Commerce's decision to continue using zeroing in administrative reviews after abandoning its use in investigations. Commerce rejected the letter as untimely. Despite the policy change with respect to investigations, Commerce continued to use zeroing methodology in the final results at issue in this case.[3]

---

[3] The parties agree that it does not matter that Commerce used zeroing in the investigations underlying the antidumping order in the present case. Oral Argument at 00:44-3:03; 27:16-31:58, *available at*

Union contested Commerce's final results, asserting that the agency's use of zeroing methodology in the administrative review was impermissible. The Court of International Trade sustained Commerce's final results. *Dongbu Steel Co. v. United States*, No. 07-00125, slip op. at 23 (Ct. Int'l Trade Feb. 4, 2010). The court acknowledged that "the Court of Appeals has not squarely confronted the precise arguments" presented by Union, but it nonetheless concluded that the "the thrust of the Court of Appeals' jurisprudence is clear." *Id.* at 21. Relying on *Corus II*, *NSK*, *Koyo Seiko*, and *SKF USA Inc. v. United States*, 537 F.3d 1373 (Fed. Cir. 2008) ("*SKF II*"), the court held that neither Commerce's change in methodology for investigations nor the adverse WTO rulings regarding administrative reviews rendered Commerce's use of zeroing in administrative reviews unreasonable. *Id.* at 19-21. The court also held that *Timken* and *Corus I* did not foreclose Commerce's inconsistent use of zeroing in administrative reviews and investigations. *Id.* at 21. Union timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

I

We review the Court of International Trade's decision de novo, applying the same standard of review applied by the Court of International Trade in its review of the administrative record. *U.S. Steel*, 621 F.3d 1351. We will uphold Commerce's antidumping determination unless it is "unsupported by substantial evidence on the record or

---

http://www.cafc.uscourts.gov/oral-argument-recordings/2010-1271/all.

otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

We review questions of statutory interpretation without deference. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1378 (Fed. Cir. 2001) ("*SKF I*"). When reviewing an agency's construction of a statute that it administers, we apply the analysis outlined in *Chevron*, 467 U.S. at 842-43. We first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If so, the unambiguously expressed intent of Congress governs. *Id.* at 843. If Congress has not spoken directly on the issue, we must determine whether the agency responsible for filling a gap in the statute has rendered an interpretation that "is based on a permissible construction of the statute." *Id.*; *see also United States v. Mead Corp.*, 533 U.S. 218, 253 (2001). We will not set aside Commerce's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

II

The central question here is whether it is reasonable for Commerce to use zeroing in administrative reviews even though it no longer uses this methodology in investigations. We have repeatedly held that the pertinent statute—19 U.S.C. § 1677(35)—is ambiguous with respect to zeroing. *Timken*, 354 F.3d at 1342; *U.S. Steel*, 621 F.3d at 1361. We have also held that because 19 U.S.C. § 1677(35) is applicable to both investigations and administrative reviews, it is equally ambiguous in both contexts. *Corus I*, 395 F.3d 1347. We have upheld Commerce's use of zeroing in both investigations and administrative reviews as a reasonable interpretation of this ambiguous statute; however, we have never considered whether it is reasonable under the second step of *Chevron* for Com-

merce to use inconsistent interpretations of the same statutory language.

Citing *Clarke v. Martinez*, 543 U.S. 371 (2005), and *SKF I*, 263 F.3d 1369, Union argues that it is unreasonable to construe a single statutory provision that applies to both investigations and administrative reviews as having opposite meanings depending on the nature of the antidumping proceeding. It contends that nothing in the statutory language supports or even contemplates inconsistent interpretations. Union also argues that the fact that Commerce changed its interpretation of the statute with respect to investigations to comply with treaty obligations does not suffice as a reasonable explanation for its inconsistent interpretation of the same statutory language. According to Union, once Commerce announced its new interpretation of 19 U.S.C. § 1677(35)—even though Commerce intended the new interpretation to apply only to investigations—it may not rely on an entirely inconsistent interpretation of the exact same statutory provision to justify zeroing in this administrative review.

The government responds that this court has already considered and affirmed Commerce's conflicting statutory interpretations in *Corus II*. As further support for the reasonableness of Commerce's interpretation in the case at hand, the government points to the long line of cases discussed above in which we have upheld Commerce's use of zeroing in administrative reviews. Finally, it argues that Commerce's interpretation is reasonable because the inconsistency has been caused by Commerce's *Section 123 Determination* implementing a change in methodology in response to an adverse WTO decision regarding zeroing in investigations.

We first address whether our prior case law has resolved the *Chevron* step two question presented in this case. We then consider whether Commerce's use of inconsistent interpretations is reasonable.

### III

The government contends that this court has previously addressed the issue presented here. We disagree. Citing *Timken, Corus II, NSK*, and *Koyo Seiko*, the government argues that "this court has squarely addressed the reasonableness of Commerce's zeroing methodology in administrative reviews time and again and has unequivocally held that zeroing is reasonable." Defendant-Appellee's Br. 9. Although *Timken* squarely addressed the reasonableness of zeroing in administrative reviews, Commerce was using zeroing methodology in both investigations and administrative reviews at that time. In *Corus II, NSK*, and *Koyo Seiko*, we refused to use adverse WTO decisions as a basis for determining that Commerce's use of zeroing in administrative reviews was unreasonable. Thus, while we have repeatedly upheld Commerce's use of zeroing in administrative reviews, we have never considered the reasonableness of interpreting 19 U.S.C. § 1677(35) in different ways depending on whether the proceeding is an investigation or an administrative review.

More specifically, the government characterizes our opinion in *Corus II* as holding that Commerce's continued use of zeroing in administrative reviews is reasonable despite Commerce's change in methodology for investigations. *Id.* at 10. This is an overbroad reading of *Corus II*. We framed the issue in that case as follows:

Corus does not directly challenge our deci-
sions upholding Commerce's use of zeroing.
Rather, Corus notes that Commerce issued its fi-
nal determination for the second administrative
review in April 2005, and it argues that subse-
quent events [i.e., Commerce's announcement of
its intent to abandon zeroing in investigations]
show that Commerce has adopted a new policy
with regard to zeroing and that the new policy
should be applied to the second administrative re-
view.

*Corus II*, 502 F.3d at 1372. The second administrative
review at issue in *Corus II* occurred long before Commerce
actually implemented changes to its zeroing methodology
in investigations. Relying upon statements of intention
by Commerce to abandon zeroing in investigations after
the WTO's adverse determination regarding zeroing in
investigations, Corus argued that we should remand the
case so that Commerce could reconsider whether to also
abandon zeroing in the final results of the underlying
second administrative review. *Id.* at 1373. We declined
to remand, noting that the change in methodology imple-
mented by the *Section 123 Determination* was not retro-
spective. *Id.* at 1374. We recognized that Commerce had
limited its policy change to investigations, but we did not
consider whether this limitation was reasonable under
*Chevron. Id.* We also rejected Corus's contention that an
adverse WTO decision addressing zeroing in administra-
tive reviews presented a subsequent event that warranted
remand.

Although we have considered Commerce's zeroing pol-
icy in administrative reviews on numerous occasions—*see,
e.g.*, *Timken, Koyo Seiko, SKF II, NSK*, and *Corus II*—we
agree with Union that this court has never addressed the

reasonableness of Commerce's interpretation of 19 U.S.C. § 1677(35) with respect to administrative reviews now that Commerce is no longer using a consistent interpretation. Accordingly, we are not bound by the prior cases and apply the *Chevron* step two analysis anew.

IV

We now turn to the reasonableness of interpreting the same statutory provision to have opposite meanings depending on the nature of the antidumping proceeding. The government asserts that inconsistent interpretations are permissible and contemplated by Congress. Defendant-Appellee's Br. 14, 16, 18; Oral Argument at 20:14-20:58. However, this court has expressly adopted the position taken by the government in earlier cases that there is no statutory basis for interpreting 19 U.S.C. § 1677(35) differently in investigations than in administrative reviews. *Corus I*, 395 F.3d at 1347; Brief for Defendant-Appellee, Department of Commerce at 18, 23-24, *Corus I*, 395 F.3d 1343 (Fed. Cir. 2005) (No. 04-1107), *available at* 2004 WL 3768287 at *18, 23-24. We thus address the reasonableness of Commerce's inconsistent interpretation against this background.

We have indicated that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently. *See, e.g., Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1379-80 (Fed. Cir. 2001) (remanding an agency determination to allow the agency to provide a reasonable explanation for its decision to interpret virtually identical statutory language in related statutes inconsistently). Our prior decision in *SKF I* is particularly on point. In *SKF I*, this court held that Commerce's interpretation of the term "foreign like product" in two different ways

within the same antidumping proceeding without explanation conflicted with rules of statutory construction. 263 F.3d at 1382. We concluded, "Commerce is required to explain why it uses two different definitions [of the same term], and that explanation must be reasonable." *Id.* This case is even more straightforward than *SKF I* and *National Organization of Veterans' Advocates* because here Commerce is construing *the exact same statutory provision* and concluding that it can be interpreted to have different meanings depending on the type of antidumping proceeding when it has previously argued the opposite. Although 19 U.S.C. § 1677(35) is ambiguous with respect to zeroing and Commerce plays an important role in resolving this gap in the statute, Commerce's discretion is not absolute. Commerce must provide an explanation for why the statutory language supports its inconsistent interpretation.

Commerce's final determination does not contain any rationale for its inconsistent interpretations due to the procedural way in which the issue was raised. Oral Argument at 15:13-15:33. Recognizing this deficiency in the record, the government proffers a single explanation for Commerce's inconsistent interpretation: The methodology for investigations was changed in response to an adverse WTO report though the *Section 123 Determination*. Basically, the government concedes that "it's the same statute, the same provision, the same issue to be determined in both initial investigations and administrative reviews," but the government has made the determination to implement a WTO decision with respect to investigations. *Id.* at 23:30-24:47. The government further contends that the reasonableness of this policy change for investigations is not before the court. Defendant-Appellee's Br. 18.

To the extent that the government is arguing that it is permissible and contemplated by Congress that Commerce may change its interpretation of gaps in the antidumping statute, we agree. Commerce is entitled to change its interpretation to respond to an adverse WTO decision though a Section 123 proceeding or may change its interpretation for other reasonable reasons. Indeed, we recently upheld Commerce's methodological change with respect to investigations because Commerce supplied a reasonable explanation for its new interpretation. *U.S. Steel*, 621 F.3d at 1360. That we have upheld the reasonableness of Commerce's changed methodology does not necessarily lead to the conclusion that Commerce's use of zeroing in administrative reviews remains reasonable. Furthermore, the political branches' decision to comply with the WTO ruling only as to investigations does not mean that it is lawful to give inconsistent constructions to the same statutory language. Rather, Commerce's interpretation of the statute must comply with domestic law including reasonably interpreting statutes. *Chevron*, 467 U.S. at 842-43. In other words, the government's decision to implement an adverse WTO report standing alone does not provide sufficient justification for the inconsistent statutory interpretations.

The government argues, without explanation, that Congress contemplated that inconsistent interpretations might occur through the process of complying with adverse WTO decisions. We are not persuaded that Congress's intent is so clear. In addition, the government has not pointed to any basis in the statute for reading 19 U.S.C. § 1677(35) differently in administrative reviews than in investigations. Indeed, as noted above, it has previously argued the opposite. In the absence of sufficient reasons for interpreting the same statutory provision inconsistently, Commerce's action is arbitrary.

In sum, our prior case law does not address the situation at hand where Commerce has decided to interpret 19 U.S.C. § 1677(35) differently based on the nature of the antidumping proceeding at issue. Applying *Chevron* step two to this ambiguous statute, we conclude that the agency has not provided a reasonable explanation for why the statute supports such inconsistent interpretations. *See also National Organization of Veterans' Advocates*, 260 F.3d at 1379-80. We accordingly vacate the decision of the Court of International Trade and remand for further proceedings to give Commerce the opportunity to explain its reasoning. It may be that Commerce cannot justify using opposite interpretations of 19 U.S.C. § 1677(35) in investigations and in administrative reviews. Under such circumstances, Commerce is of course free to choose a single consistent interpretation of the statutory language.

CONCLUSION

We vacate the judgment of the Court of International Trade sustaining the twelfth administrative review of certain corrosion-resistant carbon steel flat products from the Republic of Korea and remand this case for further proceedings consistent with this opinion.

COSTS

Each party shall bear its own costs.

**VACATED AND REMANDED**