NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FISCHER S.A. COMERCIO, INDUSTRIA AND AGRICULTURA AND CITROSUCO NORTH AMERICA, INC.,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**FLORIDA CITRUS MUTUAL AND CITRUS WORLD INC.,**
*Defendants-Appellees,*

AND

**A. DUDA & SONS AND SOUTHERN GARDENS CITRUS PROCESSING CORPORATION,**
*Defendants-Appellees.*

---

2011-1152

---

Appeal from the United States Court of International Trade in case no. 08-CV-0277, Judge Gregory W. Carman.

---

Decided:  March 23, 2012

————————————

ROBERT G. KALIK, Kalik Lewin, of Bethesda, Maryland, argued for plaintiffs-appellants.  With him on the brief was CHELSEA S. SEVERSON.

JOSHUA E. KURLAND, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States.  On the were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, FRANKLIN E. WHITE, JR., Assistant Director, and PATRYK J. DRESCHER, Trial Attorney.

MATTHEW T. MCGRATH, Barnes, Richardson & Colburn, of Washington, DC, argued for defendants-appellees Florida Citrus Mutual and Citrus World, Inc., et al.  With him on the brief was STEPHEN W. BROPHY.  Of counsel were MATTHEW J. MCCONKEY, and JEFFERY C. LOWE, Mayer Brown, LLP, of Washington, DC.

————————————

Before NEWMAN, PLAGER, and BRYSON, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PLAGER.
*Circuit Judge* BRYSON dissents.

PLAGER, *Circuit Judge*.

This is an antidumping case involving certain orange juice from Brazil.  The United States Court of International Trade affirmed the final results of the Department of Commerce's ("Commerce") first administrative review of the antidumping duty order levied against appellants, Fischer S.A. Comercio, Industria and Agricultura and Citrosuco North America, Inc. (collectively, "Fischer").

Because Commerce abused its discretion in refusing to accept Fischer's additional evidence regarding its home market prices, we *vacate and remand*. On all other issues, we *affirm*.

BACKGROUND

This case concerns the final results of Commerce's first administrative review of its antidumping duty order based on Fischer's export to the United States of certain orange juice from Brazil. To calculate Fischer's antidumping duty, Commerce compared the price Fischer was charging for orange juice in its home market (the "normal value") with the export price of Fischer's orange juice in the United States. Because Brazilian companies sell orange juice in different units of measure in their home and United States' markets, Commerce applied a conversion factor called the "Brix level"[1] to determine Fischer's normal value. Commerce published a final antidumping duty determination on January 13, 2006.

Fischer requested an administrative review of Commerce's antidumping duty order on April 27, 2007. The administrative review covered the period between August 24, 2005, and February 28, 2007. After Commerce published its preliminary results of the administrative review, Fischer filed a case brief on issues relating to Commerce's calculations. Fischer's case brief contained new evidence regarding the Brix levels for its United States and home market sales, which Commerce rejected as untimely under 19 C.F.R. § 351.301. Commerce published its final review results on August 11, 2008.

---

[1] The Brix level is a measure of the amount of soluble solids, or sugar, in a solution. 7 C.F.R. § 52.1553.

Fischer appealed Commerce's final results to the Court of International Trade, challenging, *inter alia*: (1) Commerce's refusal to accept Fischer's additional materials regarding the Brix levels for its United States and home market sales; (2) Commerce's calculation of Fischer's average inventory carrying costs; and (3) Commerce's application of the "90/60 day rule" under 19 C.F.R. § 351.41(e)(2). On April 6, 2010, the court issued a decision affirming Commerce's refusal to accept Fischer's additional materials regarding its home market sales, but remanding for Commerce to consider the rejected material regarding Fischer's United States sales; affirming Commerce's calculation of Fischer's inventory carrying costs; and affirming Commerce's application of the 90/60 day rule.

On remand, Commerce determined that the additional material regarding Fischer's United States sales did not change the antidumping duty calculation, and in a November 23, 2010, decision, the Court of International Trade affirmed. This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We are asked on appeal to review the issues that the Court of International Trade affirmed in its April 6, 2010, decision: (1) Commerce's refusal to accept Fischer's additional materials regarding its home market sales; (2) Commerce's calculation of Fischer's inventory carrying costs; and (3) Commerce's application of the 90/60 day rule.

We review decisions of the Court of International Trade without deference, applying the same standard of review applied by the court in its review of the adminis-

trative record. *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1369 (Fed. Cir. 2010). In doing so, we uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1512a(b)(1)(B)(i).

## I. Home Market Brix Levels

Fischer contends that Commerce abused its discretion when it refused to consider Fischer's additional materials regarding the actual Brix levels of its home market sales. According to Fischer, "once Commerce chose to use, and the [Court of International Trade] upheld Commerce's use of, actual Brix values as its conversion variable, Commerce was required to use the correct Brix levels of the juice delivered to the customer." Corrected Reply of Plaintiffs-Appellants ("Reply Brief") at 6. Fischer contends it "provided the correct actual Brix levels of its home market . . . sales in its timely filed case brief." *Id.* at 7. According to Fischer, Commerce's refusal to accept the corrected home market Brix data distorted the final anti-dumping duty calculation.

The Court of International Trade did not find credible Fischer's argument that its original home market Brix data contained errors. Specifically, the court noted that Fischer's original data showed varying Brix levels for its home market sales, which the court determined belied Fischer's argument that it had misreported that those sales were based on minimum, rather than actual Brix levels. *Fischer S.A. Commercio, Industria & Agricultura v. United States*, 700 F. Supp. 2d 1364, 1378 (Ct. Int'l Trade 2010). Thus, the court concluded that Commerce's refusal to accept Fischer's corrected home market Brix data "was supported by substantial evidence and in accordance with law." *Id.*

The relevant question, however, is not whether Fischer originally reported different Brix levels for its home market sales, but whether the values Fischer reported were actual Brix levels for those sales. Fischer's rejected data suggests that at least some of the originally-reported home market Brix levels were not actual Brix levels. *Compare* Joint Appendix ("JA") 75-76 (original data reporting certain Brix levels for sale numbers [366] and [432]) *with* JA 122-123 (sales receipts from Fischer's rejected materials reporting different Brix levels for those sales). Thus, the court's conclusion that Fischer could not have originally reported incorrect Brix levels for its home market sales is without adequate support in the record.

On appeal, the Government urges that in light of the varying Brix levels Fischer originally reported, "it was entirely reasonable for Commerce (and the trial court) to conclude that Fischer reported actual brix." Corrected Brief for Defendant-Appellee United States ("Government Brief") at 19; *see also id.* at 28 n.10 (referring to JA 75-76, 148-149, and 159-162 as evidencing "brix levels that varied from sale to sale."). But the evidence merely demonstrates that Fischer either reported "[t]he standard . . . brix value for Brazil sales" JA 85, or a "minimum" Brix level, *see, e.g.,* JA 149, ll. 400 and 460. Thus, Commerce's conclusion that Fischer had originally reported actual Brix levels for its home market sales is not reasonable based on the evidence of record.

The Government also contends that Fischer is precluded from arguing on appeal that its originally-filed data did not contain actual Brix levels because Fischer failed to raise that argument at the administrative level. Government Brief at 26 and 28. As we have explained, however, the antidumping laws are remedial, not punitive, and the affected domestic industry is not entitled to

a remedy that exceeds the difference between the foreign market value and the domestic price. *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995). Accordingly, Commerce is obliged to correct any errors in its calculations during the preliminary results stage to avoid an imposition of unjustified duties. *Timkin U.S. Corp. v. United States*, 434 F.3d 1345, 1353-1354 (Fed. Cir. 2006).

As discussed above, there was sufficient evidence on the record in this case to suggest that Fischer had not reported actual Brix levels for at least some of its home market sales. Because Commerce's use of Fischer's original home market Brix levels may have resulted in an imposition of unjustified duties, the decision to reject Fischer's corrected data was an abuse of discretion.

We therefore vacate the Court of International Trade's decision affirming Commerce's refusal to accept Fischer's offer of corrected home market Brix data. On remand, the court shall instruct Commerce to accept for the record Fischer's evidence of actual Brix levels for its home market sales and, in light of that evidence, determine whether the anti-dumping duty must be recalculated.

## II. Inventory Carrying Costs

Fischer contends that because it reported an average inventory carrying period for worldwide sales rather than home market-specific sales, Commerce's home market inventory carrying costs calculation was flawed. According to the Government, however, the issue of Fischer's inventory carrying costs is moot because that calculation did not have any impact on the antidumping duty order. Government Brief at p. 29, n.11. We agree. Accordingly,

we decline to disturb the Court of International Trade's decision that "Commerce's calculation of inventory carrying cost . . . was supported by substantial evidence in the record and in accordance with law . . . ." *Fischer*, 700 F. Supp. 2d at 1380.

## III.  90/60 Day Rule

Fischer contends that Commerce ran afoul of 19 C.F.R. § 351.213(e)(1)(ii) by applying the 90/60 window of 19 C.F.R. § 351.414(e)(2) for the purpose of finding a foreign like product sale to match with Fischer's United States sales.  According to Fischer, 19 C.F.R. § 351.213(e)(1)(ii) does not permit Commerce to rely on a home market sale that occurred two days before the date of suspension of liquidation because that sale was outside the period of review.  The Government argues that the period of review provisions of 19 C.F.R. § 351.213(e)(1)(ii) only relate to United States sales and, therefore, Commerce was permitted to apply the 90/60 day window of 19 C.F.R. § 351.414(e)(2) to Fischer's home market sales.

The Court of International Trade agreed with Commerce and determined that the agency had "acted within its lawful authority and in accordance with law in its application of the 90/60 day contemporaneity rule." *Fischer*, 700 F. Supp. 2d at 1381.  We see no reason to disturb that finding.  *See Hyatt v. Dudas*, 551 F.3d 1307, 1311 (Fed. Cir. 2008) ("An agency's interpretation of its own regulation is entitled to substantial deference, and the reviewing court should give effect to the agency's interpretation so long as it is reasonable.") (internal citations omitted); *see also Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) ("the administrative interpretation . . . becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation").

## IV. Zeroing

Fischer argues in two footnotes that there "would have [been] no dumping margins . . . if [Commerce] had not applied its arbitrary zeroing methodology," Brief of Plaintiffs-Appellants at p. 9, n.1 (citing *Dongbu*); Reply Brief at p. 2, n. 1 (citing *Dongbu* and *JTKET Corp. v. United States*, 642 F.3d 1378 (Fed. Cir. 2011)), and asks the court to remand in accordance with *Dongbu* and *JTKET* for Commerce to explain why it is using zeroing in certain proceedings (i.e., administrative reviews) but not others (i.e., investigations), Oral Argument at 3:01-3:07 (available at http://www.cafc.uscourts.gov/oral-argument-recordings/2011-1152/all).

The Government responds that because this issue was not fully briefed, it is not properly before the court. Oral Argument at 18:00-18:12. Be that as it may, since we are remanding this case for consideration of Fischer's actual home market Brix data, we also expect Commerce to address on remand "why it is a reasonable interpretation of the statute to zero in administrative reviews, but not in investigations." *JTKET*, 642 F.3d at 1384.

### CONCLUSION

We vacate the judgment of the Court of International Trade affirming Commerce's refusal to accept Fischer's evidence of actual Brix levels for its home market sales, and remand with instructions for Commerce to consider that evidence and if necessary recalculate the anti-dumping duty accordingly. On remand, Commerce should also provide its reasoning for its continued practice of zeroing in certain proceedings but not others. In all other respects, we affirm the court's decisions.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FISCHER S.A. COMERCIO, INDUSTRIA AND AGRICULTURA AND CITROSUCO NORTH AMERICA, INC.,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**FLORIDA CITRUS MUTUAL AND CITRUS WORLD INC.,**
*Defendants-Appellees,*

AND

**A. DUDA & SONS AND SOUTHERN GARDENS CITRUS PROCESSING CORPORATION,**
*Defendants-Appellees.*

---

2011-1152

---

Appeal from the United States Court of International Trade in case no. 08-CV-0277, Judge Gregory W. Carman.

---

BRYSON, *Circuit Judge*, dissenting.

I respectfully dissent. I would uphold the decision of the Court of International Trade as to the issue of the use of brix levels in making home-market sales calculations, and I would therefore affirm the judgment in this case.

Fischer argues that Commerce improperly refused to consider corrected information as to the actual brix levels used for home-market sales. The problem is that Fischer did not proffer the corrected information in a sufficiently clear manner to put Commerce on notice that it needed to correct an error in its calculations.

In the document on which this issue turns—Fischer's May 8, 2008, case brief—Fischer complained about Commerce's methodology, but it made a different argument from the one it makes now. In its case brief, Fischer argued that Commerce should have used "standard brix" levels when calculating prices for purposes of determining the dumping margin, not the actual brix levels at which the product is sold. Using the actual brix levels, Fischer argued, would result in a price distortion with respect to sales that Fischer made to its U.S. customer.

Fischer then stated that the "same factor applies to the NFC [not from concentrate] sales in Brazil." Fischer noted that the "standard NFC brix value for Brazil sales is 11.5," and added that a "minimum level is normally provided in the specification sheet at the level indicated." At that point, the case brief cited an exhibit (Exhibit 3) that referred to a minimum brix level, but the brief provided no further explanation of the significance of that number. Fischer closed that section of its case brief by stating that if the Department chose "to convert the gallons and kilograms [of juice] to pounds/solids, the use

of standard brix to convert allows a price neutral conversion from gallons eliminating the price distortion that resulted from the application of actual brix."

What Fischer did *not* say in its case brief was that it had misreported the actual brix levels of products sold to its U.S. customer and that it had reported the minimum brix levels instead. Perhaps Commerce could have divined as much from the materials Fischer provided for it. But to do so would have required Commerce to extrapolate from the reference to the minimum brix level in a single product specification found in Exhibit 3 and to look to other exhibits that were submitted in connection with other, unrelated issues raised in Fischer's case brief. At a minimum, Fischer did not clearly present to Commerce the fact that it had erroneously reported minimum brix levels rather than actual brix levels. In fact, Fischer did not raise the issue of its misreporting until its Motion for Judgment on the Agency Record before the Court of International Trade. The trial court made that point, noting that "Fischer appears not to have reported the incorrect sales Brix level" to Commerce, and for that reason the court found "no reason to question Commerce's reliance on the information Fischer supplied during the investigation."

Fischer relies on *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995), and *Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006), for the proposition that Commerce must accept corrections to errors identified by the respondent in Commerce's preliminary determinations. Those cases, however, involved errors that were called to Commerce's attention during the administrative process. In this case, Fischer failed to draw Commerce's attention to the perceived error until well after the administrative proceedings had become

final.  As we have explained, "Commerce is not required to correct a final determination reflecting an error made by a private party when that error is not apparent from Commerce's final calculations . . . or from the final determination itself." *Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284, 1292 (Fed. Cir. 2003) (noting that *NTN Bearing* recognizes "a strong interest in the finality of Commerce's decisions [and] does not require correction of errors after a final determination").  Here, Fischer raised the issue of its erroneous reporting of brix levels too late for Commerce to address the matter in its final determination.  *See Timken*, 434 F.3d at 1353 ("Commerce is free to correct any type of importer error . . . in the context of making an antidumping duty determination, provided that the importer seeks correction *before* Commerce issues its final results and adequately proves the need for the requested corrections." (emphasis added)).

Because Commerce was not put on adequate notice at any point during the administrative proceedings that Fischer was contending that it had erroneously reported minimum brix levels as actual brix levels, it was not error for the Court of International Trade not to require Commerce to recalculate the antidumping margin based on what Fischer belatedly identified as an error on its part.