Slip Op. 19-114

# UNITED STATES COURT OF INTERNATIONAL TRADE

GUIZHOU TYRE CO., LTD.; GUIZHOU TYRE IMPORT & EXPORT CO., LTD; & XUZHOU XUGONG TYRES CO., LTD.,

Plaintiffs,

and

TIANJIN UNITED TIRE & RUBBER INTERNATIONAL CO., LTD.,

Plaintiff-Intervenor,

v.

UNITED STATES,

Defendant.

Before: Richard W. Goldberg, Senior Judge
Consolidated Court No. 17-00101

## OPINION AND ORDER

[The court remands to Commerce for a further analysis of the Export Buyer's Credit Program. All other determinations made by the Department are sustained.]

Dated: August 21, 2019

*Ned H. Marshak & Andrew T. Schutz*, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY, and *Richard P. Ferrin & Douglas J. Heffner*, Drinker Biddle & Reath, LLP, of Washington, D.C., for plaintiffs.

*John Todor*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of counsel on the brief was *Emma T. Hunter*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Goldberg, Senior Judge: Now before the court are the Final Results of Redetermination

Pursuant to Court Remand, ECF 93-1 (Mar. 5, 2019) ("Remand Results"), of the Department of

Commerce ("the Department" or "Commerce") in the countervailing duty ("CVD") investigation

of off-the-road tires from the People's Republic of China ("PRC") during the period of review

between January 1, 2014 and December 31, 2014, *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China*, 82 Fed. Reg. 18,285 (Dep't Commerce Apr. 18, 2017) (final results), *amended by Certain New Pneumatic Off-the-Road Tires from the People's Republic of China,* 82 Fed. Reg. 40,554 (Dep't Commerce Aug. 25, 2017) (am. final results) ("*Amended Final Results*") and accompanying Issues & Decision Mem. Following the court's remand, *Guizhou Tyre Co. v. United States*, 42 CIT __, 348 F. Supp. 3d 1261 (2018) ("*Guizhou I*"), the Department has reconsidered its ocean freight costs for nylon cord benchmarks; reviewed its value-added tax ("VAT") export rebate calculation; and reviewed certain evidence regarding the Export Buyer's Credit Program ("EBCP" or "the Program"). The Department made several changes following the court's remand order. First, Commerce removed the additional ocean freight amount from the Tier 1 benchmark for nylon cord. *See* Remand Results at 17–18. Second, the Department revised the benefit calculation for the VAT and Import Duty Exemption of Imported Raw Materials program by attributing the subsidy to total sales instead of total export sales. *Id*. at 18–19. Finally, the Department provided additional reasoning to support its decision that, as an adverse inference, Plaintiffs used and benefited from the EBCP. *Id.* at 15–17. Guizhou Tyre Co. and Guizhou Tyre Import and Export Co. (collectively "Guizhou") as well as Xuzhou Xugong Tyres Co. ("Xugong") continue to challenge the administrative proceedings.

Plaintiffs do not oppose Commerce's Remand Results as they relate to the benchmark calculation and the VAT and Import Duty Exemption for Imported Raw Materials Program. Instead, Plaintiffs' comments are directed solely at Commerce's "revised" explanation for the Department's adverse inferences as applied to the EBCP. *See* Pls.' Comments on Final Remand Redetermination, ECF No. 102 (May 8, 2019) ("Pls.' Comments"). *See also* Comments of Xuzhou Xugong Tyres Co. on Final Results of Redetermination Pursuant to Court Remand, ECF

No. 101 (May 8, 2019) ("Xugong's Comments"). The court agrees. Department's newfangled explanation is nothing more than an attempt by Commerce to manufacture a conclusion that is not supported by record evidence and in violation of the applicable statute, 19 U.S.C. § 1677e. Therefore, because substantial evidence does not support the requisite threshold finding that there is a gap in the record warranting the use of adverse facts available ("AFA"), the court again remands this issue back to Commerce for reconsideration in accordance with this opinion.

## DISCUSSION

The court exercises jurisdiction under 28 U.S.C. § 1581(c). The court must hold unlawful any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Further, "[t]he results of a redetermination pursuant to court remand are also reviewed for 'compliance with the court's remand order.'" *SolarWorld Ams., Inc. v. United States*, 41 CIT __, __, 229 F. Supp. 3d 1362, 1365 (2017) (quoting *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 38 CIT __, __, 968 F.Supp.2d 1255, 1259 (2014)).

Commerce continues to misapply the AFA statute. Commerce may select from facts otherwise available when a party to a proceeding withholds necessary information that is requested, fails to provide the information in the form or manner requested, significantly impedes a proceeding, or provides information that cannot be verified. 19 U.S.C. § 1677e(a). For any use of facts otherwise available with an adverse inference, "Commerce must still explain what information is missing and what adverse inferences reasonably lead[] to its conclusion." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). And importantly, the Department may select from facts available in a matter adverse to the respondent if the gap in the record was caused by a failure of a respondent to cooperate to the best of its ability. 19 U.S.C.

§ 1677e(b). So when a government respondent does not cooperate with the Department's questionnaires—as here—a gap in the record *may* exist; but the Department cannot rely solely on the government's failure to comply in order to invoke AFA without first identifying such a gap. As Commerce has failed to conform its determination with § 1677e(b)'s dictates, the Department's remand determination is still unsupported by substantial evidence on the record. First, the Department has again failed to demonstrate why information about EBCP and the 2013 rule change is relevant to verifying claims of non-use. Second, the Department has inconsistently interpreted what constitutes a "gap" in the record under 19 U.S.C. § 1677e(b). And finally, the Department's conclusion that verification of the non-use declarations would be unreasonably onerous (if not impossible) is not grounded in any fact developed by the record before us. As a result, the court remands.

For the purposes of this opinion, familiarity with the facts is presumed. *See Guizhou I*, 42 CIT at __, 348 F. Supp. 3d at 1267–69. In this administrative review, Commerce examined whether Plaintiffs benefited from the EBCP, a loan program instituted by the Government of China ("GOC") that provides loans to foreign companies to promote the export of Chinese goods, *id*. at 1270. Previously, in response to each of Commerce's questions regarding the Program's operation, the GOC responded that "none of their relevant customers used the Program." *Id*. In support thereof, Guizhou submitted declarations from its U.S. customers confirming non-use. *Id*. at 1271. In its Amended Final Results, the Department determined that the GOC both withheld requested information and significantly impeded the proceeding such that the Department has applied an AFA rate for each respondent based on Plaintiffs' presumed benefit from the EBCP program. I&D Mem. at 24. According to Commerce, there is a "'gap' in the record [which] . . . prevents complete and effective verification of the customer's [*sic*]

certifications of non-use," *id.*, such that the Department cannot verify the respondent's non-use declarations. Consequently, Commerce continues to apply an adverse inference that Plaintiffs use and benefit from the Program.

The court's prior order faulted Commerce for applying AFA under 19 U.S.C. § 1677e(b) without substantial evidence to support the finding that there was a gap in the record warranting the use of facts available. *Id.* at 1270. Specifically, Commerce failed to show the "requisite gap needed to make an adverse inference" (and how that gap would be filled by the information it is requesting) and Commerce "declined to consider" relevant information submitted by Plaintiffs demonstrating non-use of the EBCP. *Id.* This is now the ninth time this issue has come before this court, and the Department is still no closer to complying with either the court's previous rulings or with the prescribed law. *See, e.g., Clearon Corp. v. United States*, 43 CIT __, 359 F. Supp. 3d 1344 (2019); *Guizhou Tyre Co. v. United States*, Slip Op. 19-59, 2019 WL 2156538 , 43 CIT __, __ F. Supp. 3d __, (May 15, 2019); *Changzhou Trina Solar Energy Co. v. United States*, Slip Op. 18-167, 2018 WL 6271653 (CIT Nov. 30, 2018) ("*Changzhou III*"); *Changzhou Trina Solar Energy Co. v. United States*, 42 CIT __, 352 F. Supp. 3d 1316 (2018); *Changzhou Trina Solar Energy Co. v. United States*, 41 CIT __, 255 F. Supp. 3d 1312 (2017) ("*Changzhou I*"); *SolarWorld Ams., Inc. v. United States*, 41 CIT __, 229 F. Supp. 3d 1362 (2017); *RZBC Group Shareholding Co. v. United States*, Slip Op. 16-64, 2016 WL 3880773 (CIT June 30, 2016). In nearly all of the court's decisions dealing with the EBCP and submitted declarations demonstrating non-use, Commerce was ordered to address *and correct* the blatant deficiencies in its AFA analyses. The Department's Remand Results here fare no better and, therefore, the Department is ordered to reconsider its reasoning and determination in accordance with this opinion.

The Department's major dilemma with the EBCP stems from a purported change in the Program's operation in 2013[1]. *See* Remand Results at 10. According to the Remand Results, during a CVD investigation of chlorinated isocyanurates in 2012, the Department "learned for the first time that the rules for administering the EBCP had been revised in 2013." Remand Results at 10. During that investigation, the "GOC refused to disclose the 2013 revisions to Commerce, stating that '[t]he Export-Import Bank of China has also confirmed to the GOC that the *Administrative Measures/Internal Guidelines* relating to this program that were revised in 2013 are internal to the bank, non-public, and not available for release.'" *Id*. This revision shifted the Department's original position on the EBCP. In this case and others like it, the Department has dug its heels in the ground to maintain its (now) unfaltering position that, by way of an adverse inference, firms in China like Guizhou use and benefit from the EBCP— despite direct evidence to the contrary.

In *Guizhou I*, the court held that Commerce had misapplied AFA under 19 U.S.C. § 1677e when it failed to make "an initial finding . . . that material information was missing from the record." *Guizhou I*, 348 F. Supp. 3d at 1270. In response on remand, the Department has recounted the investigatory history of the EBCP in an attempt to explain why Commerce's complete understanding of how the operation of the "new" EBCP is integral to verification. *See* Remand Results at 9–14. Plaintiffs and the GOC maintain that the rule change was "internal to the bank" and "non-public," *id.* at 10, and moreover, that the change has little relevance to Commerce because Guizhou already demonstrated that its U.S. customers do not use the Program. Once again, the Department has failed to demonstrate how knowledge of the 2013

---

[1] Prior to the alleged change, the Department was able to verify declarations from U.S. customers demonstrating non-use of the EBCP. *See generally Changzhou I*, 41 CIT __, 255 F. Supp. 3d 1312 (2017).

revisions—whatever they may be—is integral to their ability to verify claims of non-use at all. Despite the fact that Commerce "no longer attempts to verify usage" at all, *id.* at 13 n.36, Commerce notes that the change in EBCP operations upended the (theoretical) verification steps such that it now "require[s] knowing the names of the intermediary banks," *id.* at 12, or else verification "would be unreasonably onerous, if not impossible," *id.* at 13.

The Department has "reconsidered" and again invokes the authority to use an adverse inference based on a finding that the GOC did not act to the best of its ability in responding to the Department's request for "the 2013 administrative rules, as well as other information concerning the operation of the EBCP." *Id.* at 15. But for any use of AFA, "Commerce must still explain what information is missing and what adverse inferences reasonably lead[] to its conclusion." *Changzhou III*, 2018 WL 6271653, at *3. Despite the court's instruction, there are still integral flaws in the Department's reasoning on remand. The court again concludes that Commerce erred in invoking its "adverse inference" authority with respect to the (purportedly) missing information that Commerce references in its Remand Results. Both the law and the record are clear, and there is more than enough reason to support the Plaintiffs' position.

First, the Department has failed to demonstrate why information about EBCP and the 2013 rule change is relevant to verifying demonstrative claims of non-use. *See also Clearon Corp.*, 43 CIT at __, 359 F. Supp. 3d at 1349 ("At no point, including in the Post-Preliminary Memorandum, did Commerce say why it needed this information or connect its request with respondents, respondents' products, or their customers."). Commerce states that its "understanding of the operation of the EBCP began to change [] after the chlorinated isocyanurates investigation had been completed," when it "learned for the first time that the rules for administering the EBCP had been revised." Remand Results at 10. However, Commerce

does not state *why* the purported 2013 rule change gave the Department reason to think

verification was "unreasonably onerous" or no longer possible.  And importantly, the

Department has not explained how or why the rule change affected the way the Department

*conducts verification of non-use declarations*.  Commerce offers only one reason for why

verifying would be challenging—that it would require access to intermediate Chinese banks.  But

that does not address why this challenge is insurmountable, or why Commerce did not initially

solicit information from Guizhou or Guizhou's U.S. customers that would enable it to gain

access to (or identify) the intermediate banks and any corresponding bank loans or

disbursements.  Nor does Commerce adequately explain the connection between the intermediate

Chinese banks and verification; surely that is not the *only* way Commerce can verify the

submitted non-use declarations.  Moreover, it is evident to the court that even though the 2010

EBCP rules "indicate[d] that [payments] were disbursed to U.S. customers via an intermediary

Chinese Bank," Remand Results at 11, Commerce *still* accepted customer non-use declarations

as "sufficiently establish[ing] non-use of the program" back in 2016.  *See Changzhou I*, 255 F.

Supp. 3d at 1317. The Department has not pointed to any new (and inaccessible) information that

would change its verification methods, and therefore, the court struggles again to find how the

2013 rule change is relevant to verifying demonstrative claims of non-use.

        Second, and relatedly, the Department still hangs its hat on the fact that verification of the

non-use declarations is now practically impossible given the rule change.  But once again, that

conclusion puts the cart before the horse: Commerce does not know what the 2013 rule change

was, and consequently, the court finds no record support for the Department's determination that

the rule change is tied to verification.  And, while Commerce has consistently read the AFA

statute to require a finding of a "gap" in the record, the Department has inconsistently interpreted

what constitutes a "gap." *See Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1371 (Fed. Cir. 2011) ("We have indicated that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."). Just a few years earlier, during the 2013 investigation of the EBCP program, Commerce was able to determine that there was no gap in the administrative record which—like here—consisted of non-use affidavits without any evidence contradicting non-use. *Changzhou I*, 41 CIT __, 255 F. Supp. 3d 1312. In *Changzhou I*, the GOC "failed to fully cooperate with Commerce's verification of non-use of the [P]rogram," and instead, the respondent "cooperated with Commerce and submitted declarations of non-use from its U.S. customers." *Id*. at 1316. Not only did the "declarations from its U.S. customers sufficiently establish[] non-use of the program," Commerce stated that "verification of [the respondent's] customers' declarations was *unnecessary* . . . because no record evidence contradicted the declarations' accuracy." *Id*. at 1317 (emphasis added). The exact situation is presented here, except now Commerce alleges that without knowledge of the (updated) EBCP rules, the Department is left with a "gap" in the record. But if the Department was once able to take the declarations at their word "because no record evidence contradicted the declarations' accuracy," *id*. at 1316—as in this case—Commerce should have no issue treating this situation similarly. *Dongbu Steel*, 635 F.3d at 1371. Otherwise, the Department's reasoning is subject to inconsistent interpretations of what qualifies as a "gap" in the record under 19 U.S.C. § 1677e.

Finally, not only has Commerce failed to adequately support its conclusion that verification is "practically impossible," the Department also impermissibly found a failure to cooperate when the record's inadequacies originated with Commerce. "Fairness requires that Commerce, before invoking an adverse inference, must have communicated its information requests clearly and adequately," and a "party's failing to take actions never requested cannot be

the basis for a finding of a lack of cooperation under § 1677e(b)." *Peer Bearing Co.-Changshan v. United States*, 36 CIT 1115, 1130, 853 F. Supp. 2d 1365, 1377–78 (2012). Here, what Commerce labels a "failure to cooperate" is actually a failure by the Department to request the proper information. Under 19 U.S.C. § 1677e, Commerce may select from facts available in a matter adverse to the respondent *only if* the gap in the record was caused by a failure of a respondent to cooperate to the best of its ability. If there is any gap in the record at all, the missing information could have resulted only from Commerce's poorly-tailored fact-finding. *See Peer Bearing*, 36 CIT at 1129, 853 F. Supp. 2d at 1377 ("The court cannot overlook the obvious point that the Department's dissatisfaction with the answers was a result of the narrowly circumscribed manner in which the Department drafted its questions."). Instead of seeking additional information that would aid in the Department's verification process, Commerce has focused its inquiry on the operation of the program rather than Guizhou's alleged use. Commerce had an opportunity to "clearly and adequately" request additional information that would have helped the Department verify the non-use declarations (or ascertain Plaintiffs' alleged use of the Program);[2] it failed to do so, and the court will not fault Plaintiffs for the Department's shortcomings. As a result, Commerce can neither support its claim that verification would be too onerous nor that Plaintiffs are responsible for the situation in which the Department finds itself. Certainly, if the Department premised its conclusion that verifying the declarations was "unreasonably onerous, if not impossible" on information drawn from the record, that would bring the Department's determination closer to demonstrating substantial

---

[2] As Plaintiffs suggest, Commerce is at will to ask additional questions "seeking [] specific information" such as which "U.S. banks [] [Export-Import Bank] partners with," or "in the alternative, Commerce could request a list of banks from the respondents' U.S. customer that issued their loans and then ask [Export-Import] bank if it partners with those banks." Pls.' Comments at 5; Xugong's Comments at 4–5.

evidence that there is a gap in the record warranting the use of facts available.  But as it stands, based on the record and the demonstrative evidence available, the Department's position is unconvincing and fails to adhere to the court's previous Opinion and Order.  *Guizhou I*, 348 F. Supp. 3d at 1270.

The Department's determination remains unsupported by substantial evidence on the record, and on that record its use of an adverse inference is contrary to law.  Commerce has failed to demonstrate why the 2013 EBCP rule change is relevant to verifying claims of non-use, and how that constitutes a "gap" in the record.  Additionally, Commerce's anemic conclusion that verification of the non-use declarations would be unreasonably onerous is based on speculation that stems from the Department's own failure to "clearly and adequately" request information to aid in its verification.  The court is hopeful that Commerce will see the light (and the law) and apply it accordingly.

## CONCLUSION AND ORDER

For the foregoing reasons, after careful review of all papers, it is hereby

**ORDERED** that the Department reconsider its decision to apply AFA as to China's Export Import Bank Buyer's Credit Program, as in accordance with this Opinion and in adherence to the law; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order in which to file its redetermination, which shall comply with all directives in this Opinion and Order; that the Plaintiffs shall have thirty (30) days from the filing of the redetermination in which to file comments thereon; and that the Defendant shall have thirty (30) days from the filing of Plaintiff's comments to file comments.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: August 21, 2019
New York, New York