Slip Op. 12-59

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| FISCHER S.A. COMERCIO, INDUSTRIA AND AGRICULTURA AND CITROSUCO NORTH AMERICA, INC., <br><br>Plaintiffs, <br><br>v. <br><br><br>UNITED STATES, <br><br>Defendant, <br><br><br>and <br><br>FLORIDA CITRUS MUTUAL, DUDA PRODUCTS, INC., CITRUS WORLD, INC., and SOUTHERN GARDENS CITRUS PROCESSING CORPORATION (d/b/a SOUTHERN GARDENS), <br><br><br>Defendant-Intervenors. | Before: Richard W. Goldberg, Senior Judge <br>Court No. 10-00281 <br><br>**PUBLIC VERSION** |

OPINION

[Plaintiffs' Motion for Judgment on the Agency Record under USCIT Rule 56.2 is granted in part and denied in part.]

Dated: April 30, 2012

*Robert G. Kalik* and *Chelsea Savoy Severson*, Kalik Lewin, of Washington, D.C., for plaintiffs. Of counsel on the brief was *John Joseph Galvin*, Galvin & Mlawski, of New York, NY.

*Patryk J. Drescher*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, Assistant Director. Of counsel on the brief was *Whitney Rolig*, International Trade Administration, U.S. Department of Commerce, of Washington, D.C.

*Matthew Thomas McGrath* and *Stephen William Brophy,* Barnes, Richardson & Colburn, of Washington, D.C., for defendant-intervenors Florida Citrus Mutual Company and Citrus World, Inc.

Goldberg, Senior Judge:  Plaintiffs Fischer S.A. Comercio, Industria and Agricultura ("Fischer") and Citrosuco North America, Inc. (collectively "Plaintiffs" or "Fischer") brought an action to contest the final results of the U.S. Department of Commerce's ("Commerce") antidumping duty determination.  Plaintiffs challenge Commerce's decisions to include and exclude certain costs and expenses in the final results of the third administrative review of the antidumping duty order on Certain Orange Juice from Brazil.  *See Certain Orange Juice from Brazil*, 75 Fed. Reg. 50,999 (Dep't Commerce Aug. 18, 2010) (the "Final Results").

For the reasons discussed below, Plaintiffs' motion is granted in part and denied in part. The Court remands the Final Results to Commerce for reconsideration of its decision to include currency translation when calculating Fischer's constructed value and its decision to apply its zeroing methodology when calculating Fischer's dumping margin.  The Court affirms Commerce's decisions with respect to the remaining issues.

**BACKGROUND**

Fischer is a Brazilian company that produces orange juice concentrate that it exports to the United States.  In 2005, Commerce published the preliminary determination of sales at less than fair value (LTFV) and notice of suspension of liquidation of all entries of subject merchandise entered on or subsequent to that date.  *See Certain Orange Juice from Brazil*, 70 Fed. Reg. 49,557 (Dep't Commerce Aug. 24, 2005) (preliminary determination).  In 2006, Commerce published an antidumping duty order on certain orange juice from Brazil.  *Certain Orange Juice from Brazil*, 71 Fed. Reg. 12,183 (Dep't Commerce Mar. 9, 2006) (antidumping duty order).

In 2009, Commerce initiated the third administrative review of the antidumping duty order on Certain Orange Juice from Brazil. *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 74 Fed. Reg. 19,042 (Dep't Commerce Apr. 27, 2009) (initiation). Pursuant to this review, Fischer provided the information requested in Commerce's questionnaires. Fischer reported that it used the U.S. dollar as its "functional currency," but that Brazilian law required it to present its financial statements in reais, the Brazilian currency. Fischer submitted that its accounting practices follow the Brazilian Generally Accepted Accounting Principles (GAAP). Fischer also noted that its income and expenses are reported on an accrual basis, rather than a cash basis.[1] Finally, Fischer explained that although it is part of a larger corporate group, that group does not produce consolidated financial statements. Consequently, Fischer's unconsolidated financial statements are the highest level of financial reporting available.

In 2010, Commerce published the preliminary results of the antidumping administrative review. *Certain Orange Juice from Brazil*, 75 Fed. Reg. 18,794 (Dep't Commerce Apr. 13, 2010) ("preliminary results"). In the preliminary results, Commerce determined that Plaintiffs' dumping margin was 5.26 percent. On August 18, 2010, Commerce published its Final Results, adopting the 5.26 percent dumping margin that it calculated in the preliminary determination. *Certain Orange Juice from Brazil*, 75 Fed. Reg. 50,999 (Dep't Commerce Aug. 18, 2010) (the "Final Results").

---

[1] Accrual accounting records expenses as they are incurred. In contrast, cash accounting records expenses when the funds are actually paid.

**JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction pursuant to section 201 of the Customs Court Act of 1980, 28 U.S.C. § 1581(c) (2006).

This Court must "uphold Commerce's determination unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i) (1994)). When reviewing agency determinations, findings, or conclusions for substantial evidence, this Court determines whether the agency action is reasonable in light of the entire record. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).

**DISCUSSION**

Under the current antidumping law, Commerce must impose antidumping duties "on imported merchandise that is being sold, or is likely to be sold, in the United States at less than fair value to the detriment of a domestic industry." *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1303 (Fed. Cir. 2001) (citing 19 U.S.C. § 1673). The "dumping margin," which is the amount of the duty to be imposed, "is the amount by which the price charged for the subject merchandise in the home market (the 'normal value') exceeds the price charged in the United States (the 'U.S. price')." *Id.* (citing 19 U.S.C. §§ 1673, 1677(25)(A)). Where, as here, the foreign producer sells directly to an affiliated purchaser in the United States, Commerce must calculate a constructed export price (CEP) to use as the U.S. price for purposes of comparison. 19 U.S.C. § 1677a(b). Because Fischer imports through its U.S. affiliate Citrosuco, Commerce calculated a CEP for all sales at issue in this appeal.

Fischer produces only for export to the United States and does not sell goods in its home market. Thus, there is no "normal value" of goods in the home market or in any third country for Commerce to compare with the U.S. price. In this situation, Commerce calculates a "constructed value" of goods in the home market to compare with the U.S. price. 19 U.S.C. § 1677b(a)(4). A calculation of constructed value requires that Commerce determine "the actual amounts incurred and realized by the specific exporter . . . for selling, general, and administrative expenses in connection with the production and sale of the foreign like product." *Id.* § 1677b(e)(2)(A). Commerce also must calculate the costs "normally . . . based on the records of the exporter" if those records "reasonably reflect the costs associated with the production and sale of the merchandise." *Id.* § 1677b(f)(1)(A). Commerce must "consider all available evidence on the proper allocation of costs." *Id.* The statute does not provide specific guidance on the calculation of financial expenses. Therefore, Commerce has broad discretion to devise a method for calculating "general expenses." *Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1037 (Fed. Cir. 2003).

Fischer raises five issues on appeal: (1) whether Commerce improperly accounted for unrealized exchange rate variations in calculating Fischer's constructed value; (2) whether Commerce improperly included intercompany interest expenses from Fischer's financial expense calculation; (3) whether Commerce improperly excluded intercompany income in calculating Fischer's constructed value; (4) whether Commerce improperly included estimated expenses in calculating Fischer's general and administrative expenses; and (5) whether Commerce improperly applied "zeroing" in calculating Fischer's weighted average dumping margin.

**I.     Commerce improperly accounted for unrealized exchange rate variations in calculating Fischer's constructed value**

Fischer argues that Commerce improperly included unrealized currency translation in Fischer's constructed value. According to Fischer, these currency translations were provided in Fischer's financial statements only to comply with Brazilian law, and were never actually incurred or realized. Brazilian law mandates that Fischer include in its financial statement a presentation of what the difference in value of certain accounts would be if the amounts recorded in those specific accounts were translated from U.S. dollars to Brazilian reais. Fischer contends that the inclusion of this currency translation was unlawful because it was not an actual cost that was "incurred and realized," as 19 U.S.C. §1677b(e)(2)(A) requires.[2]

The Government asserts that Commerce may include both interest expenses and foreign exchange gains and losses in its financial expense ratio. *Nucor Corp. v. United States*, 33 CIT ___, 612 F. Supp. 2d 1264, 1297 (2009) (holding that the company's net foreign exchange gain was "part of the company's overall net financing expense" and could reasonably be included in cost of production calculations).

However, *Nucor* is inapposite. In *Nucor*, the company's intentional "*cash management decisions*" caused its foreign exchange gains and losses. 612 F. Supp. 2d at 1296. Those gains and losses were "not inherent in [Nucor's] manufacturing and sales operations," but came about because Nucor strategically chose to conduct business in several currencies. *Id.* at 1296. Nucor's strategic cash management decisions included whether to borrow in a foreign or

---

[2] If this currency translation had not been included as a production cost, Fischer's dumping margin would be *de minimus* and disregarded under 19 C.F.R. § 351.106.

domestic currency, whether to require immediate payment, and whether to enter into foreign currency contracts. *Id.* at 1297. In each of these strategic decisions, Nucor was "in control of whether or not to expose itself to the risk of gain or loss from fluctuating exchange rates." *Id.* Therefore, the court held that Commerce correctly included the foreign exchange gains and losses in its cost of production calculations. *Id.*

Here, in contrast, Fischer has chosen *not* "to expose itself to" the risks of currency fluctuations. *Id.* at 1297. Fischer adopted the U.S. dollar as its functional currency and conducts all of its business in U.S. dollars. However, in order to follow Brazilian financial reporting law, Fischer translates its accounts from U.S. dollars into Brazilian reais to report what the difference would have been, *if* it had conducted business in reais. In contrast to *Nucor*, Fischer does not "control whether or not to expose itself to the risk of gains or losses in such rates"[3] because Fischer conducts all of its business in the U.S. dollar. *Id.*

Therefore, the variations caused by currency translation to reais for reporting purposes are not "the actual amounts incurred and realized." 19 U.S.C. § 1677b(e)(2)(A). As a result, Commerce's inclusion of unrealized currency translation in Fischer's constructed value calculation violates the express language of Section 773(e)(2)(A) of the Tariff Act of 1930, 19 U.S.C. § 1677b(e)(2)(A). Because the inclusion of unrealized expenses is not in accordance with law, the Court remands this issue to Commerce to recalculate Fischer's constructed value in accordance with this Opinion and Order.

---

[3] To the contrary, by adopting U.S. dollar as its functional currency, Fischer appears to have tried to eliminate its exposure to such currency fluctuations.

**II.     Commerce properly included intercompany interest expenses in Fischer's financial expense calculation**

Fischer borrowed a sum of money from its U.S. affiliate, Citrosuco.  Fischer argues that Commerce should have excluded the interest expenses that Fischer incurred from this loan when Commerce calculated Fischer's cost of production.  Commerce's standard policy is to use a company's highest level of consolidated financial statements to calculate a foreign company's constructed value.  When companies produce a consolidated financial statement, Commerce normally excludes intercompany borrowings in order to construct a true and accurate representation of a company's interest expenses.  Without citing any authority, Fischer argues that, although it does not produce a consolidated financial statement, Commerce should follow the underlying principle that intercompany transactions be removed because Fischer and Citrosuco are affiliated.

However, Commerce determines what constitutes a "company" for purposes of calculating dumping margins.  *Queen's Flowers de Colom. v. United States*, 21 CIT 968, 971, 981 F. Supp. 617, 622 (1997).  Commerce's discretion to group or define companies arises out of the "basic purposes of the statute—determining current margins as accurately as possible." *Id.* at 972, 981 F. Supp. at 622.  "Where consolidated audited financial statements do not exist and are not easily prepared," it is appropriate for Commerce "to base the interest expense calculation on the audited financial statements of [only] the respondent." *Mid Continent Nail Corp. v. United States*, Slip Op. 10-47, 2010 Ct. Int'l Trade LEXIS 48, *27 (CIT May 4, 2010).  In *Mid Continent*, Commerce's decision to use only the respondent's financial statements, when the

group of affiliated companies did not produce a consolidated financial statement, was upheld

"because it was based on the financial statements of [the individual company], which produced

the merchandise." *Id.* at *29.

Although affiliated with Citrosuco, Fischer produces an individual financial statement.

Commerce followed its standard policy of using the company's highest level of consolidated

financial statements. Commerce based its calculations on Fischer's financial statements because

there was no higher level of consolidation within the group of affiliated companies. Further,

Commerce's decision that the loan was an "arm's length" transaction is supported by substantial

evidence because of the interest payment involved.[4] Therefore, Commerce's decision to use

only Fisher's financial statements is reasonable and supported by substantial evidence and the

Court upholds Commerce's decision.

### III.    Commerce properly excluded intercompany income in calculating Fischer's constructed value

Fischer argues that if Commerce includes intercompany interest expenses in Fischer's

constructed value (discussed earlier in Issue II), then Commerce must also include the income

earned on intercompany transactions. Fischer is referring to "income" resulting from the

forgiveness of loan interest. However, the forgiven interest made the associated loan a non-

arm's length transaction because that loan no longer bore a market-based interest rate.

---

[4] To determine whether a transaction—in this case a loan from one company to another— is "arm's length," Commerce may evaluate whether interest is charged in association with the loan. If interest is charged, then the parties are likely dealing with each other at "arm's length." However, if interest is not charged, then the parties are likely closely affiliated, and this would not be considered an "arm's length" transaction.

Commerce properly determined that forgiven interest should be disregarded pursuant to

the "arm's length" test of 19 U.S.C. § 1677b(f)(2). This statute states that:

> A transaction directly or indirectly between affiliated persons may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales of merchandise under consideration in the market under consideration. If a transaction is disregarded under the preceding sentence and no other transactions are available for consideration, the determination of the amount shall be based on the information available as to what the amount would have been if the transaction had occurred between persons who are not affiliated.

*Id.* Thus, Commerce properly declined to include the forgiven interest as income because

forgiven interest is not associated with an arm's length transaction.

The Court upholds Commerce's decision to disregard the forgiven interest from Fischer's

constructed value calculation because it is supported by substantial evidence.

## IV.     Commerce properly included estimated expenses in calculating Fischer's general and administrative expenses

Fischer argues that it had only estimated, but had not yet paid, the costs of planting new

citrus trees and other expenses. Thus, Fischer claims that Commerce improperly included these

expenses because they were not yet realized. Commerce must use "actual amounts incurred and

realized by the specific exporter or producer" when calculating a company's constructed value.

19 U.S.C. § 1677b(e)(2)(A). Commerce must base its calculation upon a producer's records if

those records are kept in accordance with the GAAP of the exporting country and do not distort

the company's true cost. *Id.* § 1677b(f)(1)(A).

The Government asserts that Commerce complied with the statutory requirements.

Commerce based its calculations on Fischer's records, and those records were kept in accordance

with Brazilian GAAP and did not distort Fischer's costs. Dec. Mem. at 33. Fischer reports its expenses upon an accrual—rather than cash—basis. Under accrual accounting, an estimate of an expense should be accrued and therefore reported in the income statement if the expense is probable and an estimate of the amount can be determined. A taxpayer may choose either the accrual or cash method of accounting. However, once the taxpayer has chosen its method of accounting, it cannot easily switch between the two systems because of the discrepancies for any given year. *See Anderson v. U.S. Sec'y of Agric.*, 30 CIT 1742, 1750–51, 462 F. Supp. 2d 1333, 1340 (2006).

Fischer reported that it followed the accrual accounting method, and this method is in accordance with Brazilian GAAP. This method requires that estimated costs and income be reported when the payment or income is probable and the amount can be determined. Although the expenses were an estimate and had not been paid, the cost was probable and determinable. Commerce properly included the cost in its calculations because Fischer had reported the estimated cost following its chosen accounting method.

Because this decision is supported by substantial evidence the Court upholds Commerce's decision.

**V.        Commerce must change or explain its inconsistent policy with respect to zeroing**

In the administrative review, Commerce followed its "zeroing" methodology when calculating Fischer's weighted-average dumping margin. The Court of Appeals for the Federal Circuit ("Federal Circuit") recently reconsidered the reasonableness of Commerce's policy of zeroing in administrative reviews. In *Dongbu Steel Co. v. United States*, the court questioned

Commerce's inconsistent practice of zeroing in administrative reviews, but not zeroing in

investigations.  635 F.3d 1363, 1373 (Fed. Cir. 2011).  The court held that it was arbitrary for

Commerce to interpret the antidumping statute to prohibit zeroing in original investigations

while interpreting it to permit zeroing in administrative reviews.  *Id.*; *see also* 19 U.S.C. §

1677(35) (charging Commerce with calculating the "dumping margin" in both investigations and

administrative reviews).  The court reasoned that "[a]lthough 19 U.S.C. § 1677(35) is ambiguous

with respect to zeroing and Commerce plays an important role in resolving this gap in the statute,

Commerce's discretion is not absolute."  635 F.3d at 1373.  Thus, the court remanded the case

for Commerce to either satisfactorily "explain its reasoning" for the inconsistent interpretation or

to "choose a single consistent interpretation of the statutory language" in both phases of the

proceeding.  *Id.*

        In a subsequent case also addressing the zeroing issue, the Federal Circuit specifically

noted that "[w]hile Commerce did point to differences between investigations and administrative

reviews, it failed to address the relevant questions—why is it a reasonable interpretation of the

statute to zero in administrative reviews, but not in investigations?"  *JTEKT Corp. v. United*

*States*, 642 F.3d 1378, 1384 (Fed. Cir. 2011).

        Thus, the Court remands Commerce's determination and directs Commerce to reconsider

this issue in accordance with the decisions of the Federal Circuit.  *See also Union Steel v. United*

*States*, 35 CIT ___, 804 F. Supp. 2d 1356, 1367 (2011) (concluding that, despite earlier cases

approving of the use of zeroing, it is now appropriate to "direct Commerce to provide the

explanation contemplated by the Court of Appeals in *Dongbu* and *JTEKT Corp*").

## CONCLUSION AND ORDER

For the foregoing reasons, the Plaintiffs' Motion for Judgment on the Agency Record is granted in part and denied in part. The Court **AFFIRMS** Commerce's decisions on issues II, III, and IV. The Court **REMANDS** Commerce's decisions on issues I and V. The Court **REMANDS** the Final Results to Commerce for reconsideration of its decision to include currency translation when calculating Fischer's constructed value and its decision to apply its zeroing methodology when calculating Fischer's dumping margin, and such proceedings shall be consistent with the opinions of this Court and the Federal Circuit.

Upon consideration of all papers and proceedings herein, it is hereby

**ORDERED** that the final determination of the United States Department of Commerce, published as *Certain Orange Juice from Brazil*, 75 Fed. Reg. 50,999 (Dep't Commerce Aug. 18, 2010) (the "Final Results"), be, and hereby is, AFFIRMED IN PART and REMANDED IN PART to Commerce for redetermination as provided in this Opinion and Order; it is further

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record be, and hereby is, GRANTED IN PART and DENIED IN PART as provided in this Opinion and Order; it is further

**ORDERED** that Commerce, on remand, shall reconsider its decision to apply its zeroing methodology and change that decision or, alternatively, provide an explanation for its inconsistent construction of 19 U.S.C. § 1677(35) with respect to antidumping duty investigations and administrative reviews; it is further

**ORDERED** that Commerce, on remand, shall reconsider its decision to include Fischer's exchange rate translation in its constructed value calculations; it is further

**ORDERED** that Commerce shall redetermine Plaintiffs' weighted-average dumping margins, as appropriate, complying with this Opinion and Order; and it is further

**ORDERED** that Commerce shall have ninety days from the date of this Opinion and Order in which to file its redetermination upon remand ("Second Remand Redetermination"), which shall comply with all directives in this Opinion and Order; that the Plaintiffs shall have

thirty days from the filing of the Second Remand Redetermination in which to file comments thereon; and that Commerce shall have thirty days from the filing of Plaintiffs' comments to file comments.


                                                                                /s/ Richard W. Goldberg
                                                                                Richard W. Goldberg
                                                                                      Senior Judge


Dated: April 30, 2012
New York, New York